I don't have quite the long legs of the last one, but it seems to me it's a case that has gone on unconscionably long. This particular aspect of the case is short, but the underlying OWCP claim has been pending since 1993, that's correct, Your Honor. And it's been subject to a number of Privacy Act cases and appeals, one of which you were a party of. We agree with you that it has gone on unconscionably long, the underlying litigation, although not this particular portion of it. And my name, Your Honors, is Ken Keefer, and I represent Dr. Lewis here today. I'd like to reserve about four minutes of my time for rebuttal. We're here today asking you to reverse the district court's ruling on Privacy Act issues, on FOIA issues, and on an absolute denial of any discovery to my client below. And what I'd like to do is start with some overarching principles that apply both to the Privacy Act and to the FOIA litigation here. And I believe that each of these facts is uncontested. The first is, as you pointed out, Judge Fletcher, we have been at this a very long time. There is a history, not only in this case but in three prior cases, of relationship between the government, both the VA and most recently, and the last three times, the Department of Labor, and Dr. Lewis on Privacy Act issues. In the first two cases which were tried before or actually summary judgments before Magistrate Judge Arnold, there were a total of 16 counts of Privacy Act issues. And summary judgment was entered in favor of Dr. Lewis on each of those 16 counts. In the third litigation, the one which came before you and two of your cohorts, Judge Fletcher, that was actually summary judgment entered by Judge Burgess, not by Magistrate Judge Arnold. And in that case, this Court reversed Judge Burgess on one of the key Privacy Act issues, and you found that the government had participated in a willful failure to abide by its obligations and sent the case back on that Privacy Act issue. Since that time, we are now here before you yet again on Privacy Act and, for the first time, FOIA issues. I'd like to make it clear, and I think it is certainly clear, and the government agrees, that there are two different regimes here, FOIA on the one hand, Privacy Act on the other, and they have different requirements and they have different documents that we're trying to get. We are also agreed that under both the FOIA and the Privacy Act, disclosure of documents is the primary rule, and that it is the obligation of the government under both FOIA and the Privacy Act to carry its burden to show that it meets the limited exemptions under both the Privacy Act and different exemptions under the FOIA,  When I say the documents have to be produced, I really misspoke because we are also clear that both FOIA and the Privacy Act deal with information rather than documents. And that goes to the segregability issues that we're going to talk about today under the FOIA. The district court has an obligation to look at all of the documents or an adequate Vaughan index, and we submit there was not an adequate Vaughan index in this litigation. In order to determine whether or not any pieces of information within any of the subject documents can be disclosed if they are segregable, and here the district court failed to do that. Each of those principles I think we are agreed upon. I know that we are also agreed that in this litigation, the district court held no hearings on the cross motions for summary judgment or on the motions for the 56F motion, which we filed through asking the judge to hold off on the summary judgment under FOIA so that we could have discovery. We never saw the district court in this case. The district court in this case did not ask and did not review in camera or otherwise any of the documents that we are seeking. The district court in this case did not ask the government to supplement its Vaughan index, its declarations, or any of its pleadings. And finally, the district court in this case allowed absolutely no discovery. Each of those things are going to be important as we go through and analyze both the Privacy Act issues and also the FOIA issues and the denial of discovery. I'm going to briefly touch on first the Privacy Act issues, and I certainly welcome any questions from the court. The first ground that the government raised at the district court level for failing to provide the Privacy Act issues was a D-5 exemption, documents prepared in anticipation of litigation. The parties are agreed that the government did not raise that D-5 exemption under the Privacy Act at the administrative level, and as the record has shown, the administrative level went on for well over a year here. The government never raised the D-5 exemption before the administrators. Another very important aspect of this case, which differentiates it from many of the others that we have in the jurisprudence, particularly in the Ninth Circuit, is Dr. Lewis, when he filed his two appeals, or at least two of his appeals, for the Privacy Act before the Department of Labor, specifically told them, there is no D-5 exemption here. I don't think there's a D-5 exemption. He told that at the excerpt of record at page 18, and also in a letter that he sent them to the Labor Department in the excerpt of record at page 20. He told them, if you think there is a D-5 exemption, tell me about it. Give me an opportunity to respond to it. But when the Labor Department issued both the initial denial, which was sent to Senator Cantwell, who has been trying to help Dr. Lewis get his claim granted here, and when they finally issued their final Privacy Act decision in August of 2003, it is uncontroverted that there is no mention whatsoever of the D-5 exemption. The district court also never raised or never addressed the issue of the D-5 exemption, and our contention that raising the D-5 exemption at the district court level was impermissible post hoc rationalization. This raises an interesting question legally, because if we review de novo the district court's determination as a legal matter, and if that is a legally permissible ground that the district court relied on, even though the agency didn't rely on it because it's not one of agency judgment, it's a matter of law, then could not that be a permissible ground for the district court to invoke? It may in some circumstances, but not here, Your Honor. And that's why I raised the issue of the ER-18 and ER-20 letters that Dr. Lewis sent to the Labor Department. He told them during the administrative process, I don't think D-5 applies. So Labor had every opportunity to raise the D-5 exemption. It's not self-executing. And here it certainly appears from the record, and it is uncontroverted on the record. Dr. Lewis raised those issues at the administrative level. Labor apparently looked at those issues and said, well, we don't think there's a D-5 exemption here administratively. And it wasn't until current counsel apparently got involved that the D-5 was raised as a post hoc rationalization. And the cases are very clear that while appellate counsel can be very good and very creative, that does not overcome the fact that the administrators here chose not to invoke the D-5 exemption. And that raises kind of a different question. I mean, we have the typical cases you've cited where you can't go back and, you know, rejigger the agency opinion, so to speak, because it is what it is. Correct. But if it's simply a legal statutory matter as to whether something is applicable, then the question is, is there a waiver or a stop, it seems to me, not necessarily whether it was improper for the district court to invoke it. I think it's either a waiver or a stop, or perhaps if it can be, I think it's both here. Particularly, as we say, because Dr. Lewis raised the issue of a D-5 exemption at the administrative level, and the administrators chose not to invoke that when they issued their denial. It's also important to look in the particular facts of this case, and this is set forth at the addendum, page 2 of our opening brief. The Labor Department has their own regulations with regard to the processing of Privacy Act appeals. And 29 CFR 71.7pnb, and that's at the addendum of our brief, page 2, sets forth exactly what the Labor Department has placed upon its own shoulders when it either grants or denies an appeal. And 71.7b provides that the Labor Department has to set forth a short ground for its either grant or denial, and it has to set forth each of the exemptions. And that regulation, although it deals with the Privacy Act, refers to both the Privacy Act and the FOIA. And Labor itself has said, we have to give you every exemption that we are relying upon. The final aspect that we have here, and this is set forth in the excerpt of record at page 56, when Judge Burgess, of course, as the Court knows, as is tradition in this district, issued an order and we had to issue or we had to jointly submit a status report. And at ER 56, we jointly submitted it, signed by Mr. Wynn and by myself. We told the Court, and it's true, that this was an appeal based upon an administrative record, period, not an administrative record which can be added to after the fact in a post hoc rationalization fashion by separate counsel coming in after the administrative record is closed. Would you turn, before your time runs out, to this FOIA request, this, you know, the now infamous Vaughan Index. Yes. Absolutely. I'm sure no one loves the Vaughan Index, but there's a variety of cases. And then there's, you know, certain judgment calls that need to be made as to how big or little or extensive the Vaughan Index is. And within that range, you know, some leeway, I think, has to be given to the agencies. Oh, I absolutely agree. What do you think are your best arguments that there are inadequacies here? Well, the first is, and if I may jump for just a moment, Your Honor, I'll get to the Vaughan Index, but with regard to as a matter of summary judgment jurisprudence here, the Miller Declaration is not an affidavit. And Rule 56-F provides that if you want to oppose a motion for summary judgment we had cross motions here, you need to do it by affidavits, not by unsigned papers, which is... Was that raised in the district court? It was. Absolutely, it was. Yes. And at ER 55, Your Honor, we set forth where we told the district court that the Miller Declaration was not a proper affidavit. That was at ER 55. So as a matter of summary judgment... Yes, Your Honor. What was your wording, counsel? You said it was not a proper... We said it was not a proper affidavit. Yes, Your Honor. And that's at ER 55. Did you specifically challenge the fact that it was unsworn? We didn't, Your Honor. And we thought about that. And I do not ever try to engage in sharp practice, but we were concerned about the fact that this was not signed. We raised it by saying it was not a proper affidavit, and the government never did anything to change it. They have offered to change it here, and of course they have. But if you didn't say that it was unsworn and that was your problem with it, how would the government know that it should change it in that respect? Because the government files affidavits all the time, Your Honor, particularly on FOIA cases and particularly on Vaughan indexes. And here they didn't. And I think that's a challenge, isn't it? It seems like a gotcha. I'm sorry, Your Honor? Is it a challenge to the fact that it was unsworn waived by not asserting that? I don't think that it was, Your Honor, no. I don't think that it was. And now, Judge McGoon, I would like to get to your issue. Well, I mean, but it does seem to me that it's a little bit of a gotcha because you say it's improper, but then and there's no details on that. And then it comes up here and you say, well, here's the very specific reasons that it's improper. Easily something that would have been remedied in the district court had that information been put out on the table. Well, there's an issue there, because, and I'm going to get to your issue about our best issue on FOIA. I promise you, Your Honor. But there is an issue as to whether or not it was easily remedied. We have raised issues with regard to whether Ms. Miller was in the position to swear that an appropriate search was conducted here. And we don't think she was in that position. So could she have signed this declaration under oath as an affidavit? There are real questions about that. Well, but that's a different issue, it seems to me. Well, why don't you proceed then with the Vaughn index issue. Yes, Your Honor. Thank you. And the primary concern that we have with the Vaughn index is that this particular Vaughn index is the height of boilerplate and generalities and gives us almost no opportunity to advocate for the production of documents. If I could, Your Honors, I have a couple of pages. They are out of the excerpts of record here that I'd like to hand up simply to help you to follow. I understand that's not normally the procedure in a book. No, that's fine. If you have copies for counsel, please hand them over to the clerk. Sure. As long as they're part of the record, we can look at it. They are. Thank you. I've handed up to the Court, and I thank you for your indulgence, two pages. The first is page ER18, and that is an excerpt from the Miller declaration and what has been called here the Vaughn index. The second page is from ER70, and that is one of the documents which is referred to on the first page, on page ER48. And I'd like to go through first what Ms. Miller told us on page 48 in her alleged Vaughn index with regard to the document dated January 20th of 2002. She tells us it's a memo from an OWCP employee. She doesn't tell us who it is or how up in the hierarchy that person is, and so how are we supposed to advocate whether or not there is a privilege or the work product doctrine. To an SOL attorney asking for advice on Dr. Lewis's claim. Now, what type of advice is being asked for? We're not told. Who's the recipient? We're not told. We are also not told whether or not there are any carbon copy recipients of this, something that you also, of course, need in order to advocate whether or not there is a privilege or the work product doctrine. And we are also not told whether or not any of this information can be specifically segregated. I then ask you to look at the second page that we've handed up. ER-70 is the document that Ms. Miller was describing, the 120-02 document on the first page that I handed up, ER-48. The first thing that we notice, and this document was actually produced, it was found by Dr. Lewis in Dr. Lewis's OWCP file, and the government has not contested that. So one of the 15 documents that we're seeking under the Privacy Act, they gave to Dr. Lewis in his own OWCP file. Taking into consideration the care that they did not give to the documents in Lewis III, where Judge Fletcher, you and others found that they had involved in willful violations of their obligations under the Privacy Act, they take one of the documents that they're claiming privilege on, and they give it to Dr. Lewis in his file. They didn't tell us in the Miller Declaration that a CC recipient to Carolyn Schwab, a claims unit manager, was made. And that raises the question, and that's one of the reasons I'm jumping ahead, but I want to get into discovery, why we want discovery. Who else got this document? Who else got the other documents? Did they maintain the confidentiality of all of these documents? Well, they notably didn't maintain the confidentiality of this document. And then we highlighted certain portions of ER-70, and it's clear that there could have been a segregation here. There is some request for advice, but there are also simply some factual matters like the fact that I wrote a letter. Well, that's not privilege, the fact that I wrote a letter, and that's in the first sentence. But the district court, well, Ms. Miller, in her declaration under FOIA, said nothing can be segregated out of here. The district court didn't ask to look at any of these documents. And the district court, with all due deference, basically rubber-stamped what Ms. Miller said in this declaration, both with regard to the claims of privilege and work product doctrine and also with the claims that nothing could be segregated. And this is just one example. We happen to have it because they gave it to us. But it points out the various deficiencies in this particular Vaughan Index. And, you know, Your Honor, of course, there is some latitude that has to be given to the government here. And I know that you got the letter that the government wrote last Friday with regard to post hoc rationalizations. And it struck me as I was reading that, the Fox decision out of the Fourth Circuit. Towards the end of that decision, the Court's talking about the Vaughan Index in that case. In that case, it involved the CIA, and there were 21 pages of documents. We have far more than that here. And the Court said we find that the Vaughan Index and the declarations that the government filed with regard to those 21 pages of documents are sufficient. And the Court points out that the government there took 100 pages of declarations and Vaughan Indexes to describe in detail 21 pages of documents in the Fox case. Now, I'm not saying they had to do 100 pages here, but they clearly had to do a lot more than they did. I see that. Yes, Your Honor. How long was the index here, Mr. Keefe? Well, it's about 10 pages, but it's basically the same form as ER-48 with very little detail with regard to which document. It was so long because there were so many documents here. Thank you. And finally, I see that I have to stop and sum up. Why don't we hear from the Department of Labor, and I'll give you a minute for rebuttal. That would be fine. Thank you very much, Your Honor. May I please the Court? My name is Peter Wynn. I'm an assistant U.S. attorney and representing the Department of Labor in this case. The FOIA and the Privacy Act are obviously about open records, open government, and particularly the Privacy Act has to do with the right of an individual citizen to see a file maintained by the government, used by the government to make decisions about that citizen. Nobody is here contending that these statutes do not have a broad presumption of open government and access. What we are saying here is that there are limits, and those limits arrive particularly where you have, as we do in this case, attorney-client communications, which aren't simply attorney-client communications, but they are attorney-client communications against a history of a very long and regrettably, regrettably long, contentious litigation that has taken place between the Department and the requester. The government is not stretchy here to try to use privileges to protect documents that should see the light of day. What we have done is narrow down the dispute to a very small set of core documents. Thirty-nine of those documents relate to prior litigation. Fifteen of those documents relate to the current claim by Dr. Lewis for workers' compensation benefits. A little procedural history I think is helpful. Dr. Lewis in 1993 asked for workers' compensation benefits relating to his appointment with the VA. That claim was denied in 1994. Dr. Lewis then used the Privacy Act, several lawsuits involving the Privacy Act, very successfully to collaterally attack the decision that the Department had made denying him benefits, and ultimately succeeded after this Court ultimately ruled in his favor and convinced the Department to reopen his claim for benefits. That proceeding is now still going on. In the context of the Department's reconsideration of his request for benefits, the agency decisionmaker asked for legal advice. And the agency asked for legal advice for two reasons. One, obviously, there's a long history of litigation with Dr. Lewis, but also because the agency decisionmaker wanted to get it right. Now, the file that the agency decisionmaker relies on is open. That's open to Dr. Lewis under the Privacy Act. And while Dr. Lewis was looking through that file, he found ER-70, which Mr. Kiefer has just shown the Court, which is the memorandum where the agency decisionmaker is asking for legal advice to the Office of Solicitor of Labor. And Dr. Lewis asked to see that file. And that's what the contention here is about. Now, the agency took the position that the Privacy Act did not apply because they had a rule. They enacted this rule and they relied on their rule that took the agency's lawyer's files out of the Privacy Act. Instead, the agency processed Dr. Lewis' request under the Privacy Act under the FOIA, which is provided for in the Privacy Act. Okay? So then they withheld, they gave him lots of documents, several hundred documents out of the lawyer files. And withheld a certain number of documents and they cited Exemption 5 as the main reason for the withholding of those documents. Exemption 5 is very close and similar in content to D-5, which is the Privacy Act exception. The agency just took the position that the Privacy Act didn't apply because it only applies to a system of records and we've removed the system of records pursuant to our rule. Now, when this came, arose in the district court, the issues relating to the rule, whether the rule was properly promulgated, whether the rule covers these particular documents or not, was very, very difficult to get into. And a far simpler resolution of that at that point was just to cite the fact that the statute, D-5 of the Privacy Act, doesn't apply. It doesn't apply to these documents. But did the government rely on D-5 earlier? In the district court, the government asserted the D-5 exemption as a defense to the Privacy Act claim of Dr. Lewis. I mean, did the agency rely on it? The agency, only in the district court, made that assertion. But if they didn't rely on it in their internal process, is that a Chenery problem? Is it a Chenery? A Chenery. Right. Dr. Lewis has argued that this is sort of a post hoc rationalization. The courts have addressed, I mean, this happens quite frequently when you have statutes with lots of exemptions, particularly in the FOIA, but also in the Privacy Act. Agency will cite one ground for the defense of the exemption, and then at the district court level, we'll come up with a more accurate ground. But it was called to their attention in the agency proceeding, and they declined to rely on it. That's correct. Dr. Lewis raised the D-5 issue in his initial privacy request. So if it can't be exempted under FOIA, it seems to me you've got to pony up. The agency assumed, perhaps correctly, perhaps incorrectly, that the rule that they had promulgated simply removed these documents from the purview of the Privacy Act. Privacy Act, as you recall, only applies to a system of records that the agency maintains and has rules permitting agencies to remove those system of records from the purview of the Privacy Act. Then you go to the analysis under the FOIA. So the agency, because it was under the assumption that it had removed these records from the Privacy Act, didn't address the exemptions within the Privacy Act. It simply went ahead and ruled under the FOIA that Dr. Lewis didn't get them. What would be your best authority that you can raise this D-5 exemption or exclusion in the district court without having the agency rely on it? Young v. CIA. Okay. That's at the Fourth Circuit. There's also Frito-Lay, Farm Workers, and Duke, and all of which were cited in the 28-J letter we submitted last Friday. This is pretty black-letter law in the FOIA and in the Privacy Act context. Agencies are ñ this is not a ñ and it's because of the de novo nature of the review. Agencies do not litigate FOIA and privacy cases in the agency. They don't create an administrative record. They don't create an administrative record suitable for review. Judge Fletcher, for instance, in the west ñ I think the west ñ the Friends of West Coast Forks decision ruled correctly that with a fee waiver issue under the FOIA, that is a ruling based on the record of the agency. The agency does create a record suitable for review, and Congress provides for a review of that record. But the courts that have addressed this particular issue, and, of course, the Fourth Circuit has as well as many district courts, they ruled that there is no record suitable for review under an APA review. What we're talking about here is de novo review of the court's injunctive powers and the Vaughan Index, the affidavit or the declaration of the agency, the various evidentiary issues that the district court relies on are created in the district court. And so in the Fourth Circuit, for instance, they pointed out that the plaintiff can bring a suit even without an agency action and that the court can rule on that as an initial matter based on a record that the district court creates. And that's what we're dealing with here. Okay. Now let's go to the Vaughan Index. At any time before the summer judgment was filed or while it was pending, did counsel sit down and go over this Vaughan Index for claimed deficiencies, you know, sit down with each other? Did Mr. Kiefer and I go through the Vaughan Index together? Yeah. We did not. The Vaughan Index was some – maybe you can help me with where you're going with the question. Well, I just want to know if you sat down and went through it, because what they're claiming is that this is inadequate in order to determine whether there's exemptions, correct? That's correct. And, you know, it just seems to me that it's an odd thing for the court of appeals to be sitting here going through the 10 and 39 documents. I mean, having been locked in warehouses over many years in litigation and having had thousands of attorney-client, you know, indices, the normal practice is you sit down and you say, hey, look here, you don't tell me are there any CCs, because, you know, maybe it was sent to the cousin or the brother and then there's no privilege. Or this is deficient because, yeah, preparing for argument, that I can understand, but this one only just says attorney e-mail. Do you know what I'm saying? The practice in FOIA cases is typically to file your bond index together with your motion for summary judgment. Right. It's not a discovery thing where you sit down with opposing counsel and you try to hash it out. No, it's not, but that's what I'm trying to tell you is this makes no sense, is that we've now been through a whole district court and now he's being faulted for not doing certain things. And now we're up here. And so all I'm saying is let's say we look at this and we say, you know, we have to go through here point by point and find out if the bond index is sufficient. And we might go through here and say, well, you know, on balance it is, but I don't know, they don't list any CCs. And so, you know, that's kind of a technical deficiency, but it's one that could undermine the attorney-client privilege. So all I'm suggesting is it sure doesn't make sense to me from the government's point of view that it wouldn't try to figure out, if deficiencies are pointed out to it, whether it wants to rise or fall on the index as opposed to kind of dumping it in the lap of the district court and now the court of appeals. So that's not really a question, in fairness to you. So here's my question. Do you think that we need to go through the bond index item by item to determine whether we think it met sufficient criteria to provide the basis for a challenge? Let me answer that in two ways. First of all, this Court has de novo review of the district court's record. And, of course, in the context of that review, it's a two-part test under the fiduciary idea. You look at whether it was an adequate basis, factual basis for the courts, to make the conduct of Judge Burgess, in this case, rule that the bond index was reasonable, that it was reasonably specific. And then you can review that, obviously, based on the adequacy. Well, he kind of gave it a... He reviewed it in a fairly cursory manner. His review doesn't really give us much help. One thing we could do would be send it back to him and tell him to write a little more on each of these document issues. I think it's – I think that would not be appropriate in this case for this reason, Your Honor. The bond index, which this Court has the ability to review on its own, does go through in considerable detail. And again, you know, there's no such thing as a perfect bond index, as Judge McKeown pointed out. But I – but the context in which Judge Burgess is reviewing this particular bond index is a context where we've got to focus on what these documents are – what the request is asking to see. These are attorney-client communications. They are communications between attorneys and decision-makers and attorneys and other attorneys. We're not here talking about a situation where the issues are particularly complex. No, but let's just take the example of the CC. I mean, you know, it's – normally, you know, there's no perfect index. But the standard format is author, recipient, date, topic. And the recipients include... If there was an attorney-client document here – let's just take one that's facts cover sheet on information for oral argument to the Ninth Circuit. On its face, that is a clearly attorney, you know, work product or attorney-client document. But what if they CC'd that to the Seattle Times because they want them to know that we're appearing here in the Court and this is the topic? Probably they didn't. But if that were the case, if you saw the CCs, then the judge might make a different determination. I think that the Vaughan Index – what we've got is an argument from silence, Your Honor. An argument for? It's an argument from silence that the – I think the – could there have been a CC on that document? Can I say that I've looked at all these documents? I can – I've looked at all these documents myself. They are clearly within the realm of attorney-client. And if there had been a CC to the Seattle Times on one of those documents, I assure you it would not have ended up in the Vaughan Index. It would have been produced. Well, no, but see, that – if you had an affidavit in the record to that effect, that would be great. But the issue here before this Court is whether the determination was Judge Burgess's ruling that this was an adequate Vaughan Index is clear error or not. And it's – it looks at the Vaughan Index, and then it goes to that determination by Judge Burgess. So the – and let me just point out something. Mr. Kieffer and Dr. Lewis point to ER70. And they mother-may-I us on the ER70 and say it could have been redacted. Okay? Well, I would encourage the Court to look at ER70 for itself. That doesn't concern me so much. Not much on that, that redacting it would have helped them by telling them they could have done it.  It's not the rule on redaction. It's not of any substance. And that's the rule on redaction. But getting back to the general issue of adequacy, you know, I'm going to have to read all these cases further on the Vaughan Index. Right. Cases for that standard. But in the normal Federal rule of civil procedure context, which I do still remember quite a bit about, having gone through that process like Judge McEwen, you know, it was pretty standard when people identified a privileged document that they would at least identify all persons who received a copy of it because the privilege could be lost by the disclosure. So it would be normal in the instructions with the discovery device, whether interrogatories or document requests, to ask for advice in an answer about whether those privileged documents, if privilege was claimed, advise us from whom, to whom, date, subject matter, and also everyone who got a copy of it. And if it doesn't have that information, it strikes me it's not substantively adequate for the opposing party to make a privilege assessment. And I don't know how we can just say trust the government. Because, yeah, you would say you wouldn't put it on the list if there was a copy to the Seattle Times. But when there's a copy to, let's say, a claims manager who's not a lawyer or might not be a lawyer, maybe that doesn't break the privilege because it's like a copy to the top management of a company, a control group kind of limit. Or maybe it does break the privilege if it goes too far. And you can't even in the normal corporate context, at least there used to be a control group test of, you know, who you could copy stuff to without losing the privilege. But in this setting, if you're not identifying copy recipients, how can counsel even address that? I think the question for this Court is not whether the Vaughn Index could have been better. It could have specified NCC to claims examiner or items to that effect. But the issue is whether Judge Burgess, in reviewing the Vaughn Index, had an adequate basis to say that the Vaughn Index was sufficiently particular to know that these really were attorney-client communications, that these really were documents that were created in anticipation of litigation, which is the legal case. And where in his opinion would you have me look so that I would – and we reviewed de novo on these Vaughn Indices. Correct. But nonetheless, we'd like to have any illumination from the district court judge. But I didn't see a lot on that point. Well, the district court specifically ruled that the Vaughn Index was reasonably specific in response to Mr. Kieffer's complaints that it wasn't. But did he say exactly what he did? And we've got the Miller, whatever it is, affidavit or not an affidavit, which wasn't from personal knowledge. She's not the one who did it, apparently. Ms. Miller was the – supervised the process. Yeah. And the case law is quite clear that personal knowledge is not required by the person doing a Vaughn Index declaration or a declaration. And one thing, too, is that the fiduciary case doesn't even require the thing to be notarized. I mean, it's a reasonableness test. And the question is whether this reasonably allowed the decisionmaker to make the determination that these really were documents covered by the privilege and gave a fair opportunity to the other side to challenge their position. Where, in his opinion, does he address the reasonableness of the Vaughn Index? I'm looking at his order now, and can you tell me at what page of his order he addresses that reasonableness question? I'll have to look it up. Let me just maybe short-circuit that. It's on page ER76, lines 4 to 8. He says, The Court has reviewed the Miller Declaration and concludes that it contains sufficient detail to see that the document or e-mail falls within a particular exemption or privilege, which in turn is explained in the paragraph of the tables.  Let me just say this point. When we retire, we're going to have to figure out what to do with this case. And it seems to me that it might be possible, since both counsel are here and you don't have to do this, it's up to you, that you could actually sit down and talk about your fairly short 10-page Vaughn Index, and you might even come up with a solution for additional information on some of these to the point that perhaps, as reasoned counsel, Mr. Kieffer will say that his appeal is narrowed on certain points. You don't have to do that, but it just seemed to me that that you hold the cards of the documents, he holds the cards of the appeal, and that there's a more practical way to resolve this than having three Ninth Circuit judges run your litigation for you. And, you know, we can do it. We will, you know, and we're happy to do it. But I just throw it out as a suggestion, as long as you're here. And I think Mr. Kieffer and I would be very happy to sit down together and see if we could narrow the issues for this Court to decide, and if there's additional information we could provide, Dr. Lewis having to do the details of the Vaughn Index, we'd be happy to do that. Well, we certainly, maybe we can give you 10 days. You know, we'll promise you we won't give you a decision within 10 days, and you have an opportunity jointly to notify the Court if there's, you don't have to tell us whether you sat down or didn't sit down. You just can jointly notify us whether we should proceed apace or whether there are any revisions to the issues on appeal. Because you have two great counsels. We don't have any objection to giving him the names, and we don't have any objection to giving him CCs or anything like that. Whatever. And, you know, everybody here is quite familiar with the law and the documents, and so we'd rather have it in your camp, I think, than the court of appeals. Well, and I appreciate that. We've taken a fair amount of your time. Did you have any final comment you wanted to make to us, or anything in particular you want us to look at? We're happy to hear one last minute from you. The case is, I think the Court's got a pretty good handle on the issue. All right. And I think that the only question I would have is that if Mr. Kieffer, I mean, we will be happy and we'll give him the additional information he wants that he's complained about on the appeal. What would be the appropriate mechanism for Mr. Kieffer and me to notify the Court? I think you could write a joint letter to the Court just telling us whatever it is you are jointly going to tell us, whether maybe just say decide the appeal as is, or advise us that there are certain aspects that perhaps are not in dispute, so we shouldn't spend our time on those. Or number three, whatever third option you come up with, because I don't know what all the permutations might be. But that's a suggestion. I was just going to say this, because Judge McEwen's comment that we might sit down and have to go over this document by document. Let me just say from my point of view, I don't think that's going to happen. I mean, maybe Judge McEwen and Judge Fletcher will want to go over it document by document. But my view is that that's not really a proper function for us, and that at least the way I'm going to look at it is I'm going to look at what, you know, if you can't narrow it, I'm going to look at what the district court judge did. And if I think he hasn't made an adequate document by document review, then I'm going to want us to urge what it is he's got to do and send it back to him. Because we really are not in a position, in my opinion, to, like, handle discovery disputes document by document. And that's what this Vaughan Index sort of comes down to. All we can do is say what the standard is. And if the standard of reasonableness is adequate and what he did was adequate, then I think we can affirm. But if what we think he did was not adequate, we have to amplify what it means to say something's reasonable and what it is the district court has to do. But I don't see how we can even come close to doing it. Because even if we could do it here with 15 or 20 documents, how could we do it in a case with 1,000 documents in dispute? That can't be the answer. I have something to say to both counsels. I have been involved in this case at an earlier point, and the government got off to a very lucky and inappropriate start. And this claim has not yet been resolved. That's not good business for the government. It's not good business for the courts. This guy has a claim, and that's not part of what's before us now. But it seems to me that there should be a resolution one way or another. You say it's still before the agency. My understanding, and I will begin with legal court, we have, I have personally as well as I know the agency counsel has been extremely active in trying to move the decision along for obvious reasons, which the Court noted right at the very beginning of this argument, which is this is going on way too long. The – there are a lot of reasons for that, and they're not before the Court. I think it's fair to say that both parties have not exactly given us a playbook that we want to repeat. I know that my role has been not simply handling the FOIA case, but has been really encouraging this agency to hurry things along, and we were hopeful that a decision would be made last week. It has been delayed. And without questioning why it hasn't been decided yet, I think it's going to be decided very soon. But I do apologize to the Court that this is still before the Court. It is not expected. I agree. Thank you. All right. Thank you for your comments. If I may have a moment or two, and if I may go way beyond the record, but in response to your question, Senator Cantwell's office, her director of services for the Washington State and also for her D.C. office, have been calling the Labor Department three times each over the past week with regard to Dr. Lewis's claims, and none of those calls have been returned to Senator Cantwell. Well, you'll have an opportunity to talk with Mr. Wynn again. And, you know, we're here on the FOIA case, and maybe we can resolve it. That's not why we're here. I would like to address quickly the Vaughn Index. We will sit down. We will try to resolve these issues. We will not be able to resolve any segregability issues because he's not going to show me the documents. So that's not going to happen. I wish that it could, but it can't. And the district court didn't do anything with regard to segregability other than say, you're right, Ms. Miller, nothing can be segregated out of any of these documents, not a word. So that's not going to be resolved. Why would that – why should we second-guess the district court on that point? Because he didn't have a sufficient basis upon which to make his determination. And the reason for that was? There wasn't a sufficient amount in the Vaughn Index. And also – But did he have the documents? He had the documents, but he never looked at any of them. And how do you know that? Well, no, he didn't. He did not have the documents. They were never submitted to him in cameras. So, no, he had them available to him had he asked, but he never asked. So, to the best of my knowledge, he did not have any of these documents before him in chambers. If there were a case that involved 1,000 documents instead of 20 or 30, does the district court have to write a paragraph about segregability? I don't think so, Your Honor. And there is some case law on that. If you take a representative sample, it's a reasonableness standard. With regard to the reasonableness, I also want to point out some additional difficulties, and these are raised in the brief. But on page 36, ER 36, which is a portion of Ms. Miller's declaration, she says that there are some documents contain the comment, not for the file. Well, that obviously intrigued us. And if I may ask the Court's indulgence again to hand up the one not-for-the-file document which they produced to us. And this is at ER 30. And I thank you again for your indulgence on this. This is the only document that they produced to us that says not-for-the-file despite the fact that Ms. Miller says in her declaration there are a number of documents which contain the document not-for-the-file. So when we sit down with Mr. Winn, I can't deal with any of these other not-for-the-file documents because they didn't produce them and they didn't include them on their Vaughan Index. But I want the Court simply to look at this one document that they did give us. The explanation of not-for-the-file is this is a privileged document. It appears to be a yellow sticky, and it's on top of a fax cover sheet. I'll represent to the Court that the fax cover sheet was sent by my client. That's the Kinko's fax number down in Thurston County that he uses. It was sent by him to the OWCP. And that's the attorney-client privilege document upon which they are claiming not-for-the-file and attorney-client were products. So we're going to have some problems. Well, you work those out. I have one last question and then your time will be expired. I can see in the district court opinion from Judge Burgess where he references the segregability issues. How do I know from the record that he didn't look at any documents? I think we can. I'll represent to you that none of the documents were given to the Court, and I think that's correct. All right. Thank you. Thank you very much. You have a broad range to invoke your legal talents with each other to see if you can bring a resolution that won't leave you back bouncing around. Because I can tell you if this were to be remanded, then it's still going to cost a lot more time and judicial resources before you get another answer, and you might not like that answer, and then we might be back to the Court of Appeals, and the issue still wouldn't be resolved. So this may be one that you want to talk about. And if for whatever reason in talking about it you felt it might be helpful to have a third party, there are Ninth Circuit mediators available, and you would be welcome to call the clerk of the court here in Seattle and request the services of a mediator. Thank you, counsel, for your argument. And the case of Lewis v. The Department of Labor is submitted. We're adjourned. Thank you. Is it possible this case may be mooted by a decision? I don't think so. It's possible. It's possible. And we will certainly keep that open. The decision goes your way. Thank you. All right. Thanks.
judges: B. Fletcher, McKeown, Gould